ROY NOBLE LEE, Justice
for the Court:
The Pontotoc County Welfare Department filed a petition in the Chancery Court of Pontotoc County, Honorable George F. Adams, presiding, on May 28, 1979, against Andrew Donaldson, seeking to determine paternity and for child support. Donaldson was personally served with process and a decree pro confesso was entered against him on June 14, 1979. Subsequently, Donaldson filed a motion to set aside the decree pro confesso and final decree under Rule 60(b)(6), Miss.Rules Civ.Proc. After full hearings, the lower court denied the motion and Donaldson has appealed here, assigning the following error:
The court erred in failing to set aside the previous decree pro confesso under Miss.Rules of Civil Procedure, Rule 60(b)(6).
The sequence of the proceedings in the lower court follow.
*1378 (1) Appellant was served with process on May 28, 1979, requiring him to answer the petition.
(2) At the next succeeding term of court, no answer was filed or appearance made and a decree pro confesso of paternity and child support was entered against him on June 14, 1979.
(3) On July 30, 1980, a petition for contempt citation was served on appellant.
(4) On August 27, 1980, an order was entered adjudging appellant in contempt of court and was entered by default.
(5) On January 4, 1982, a second petition for contempt citation was served on appellant. He obtained an attorney, filed an answer to the petition and denied that he was the father of the children and prayed that the two previous decrees pro confesso be set aside. ••
(6) On August 12, 1982, appellant filed a separate motion to set aside the decrees pro confesso, and the chancellor entered an order finding appellant to be in contempt of court.
The chancellor sustained appellant’s motion to set aside the decrees pro confesso to be considered as a motion under Miss.Rules Civ.Proc.Rule 60(b)(6), and, after a hearing, ruled that the prior decrees should not be set aside.
On the first citation for contempt, August 27, 1980, appellant was found in contempt of court and was ordered to serve a term of ninety (90) days in the Pontotoc County jail or purge himself of the contempt by paying the sum of $500.00 to the Pontotoc County Welfare Department. Appellant then paid the $500.00 and purged himself of that contempt.
A period of more than two and one-half years elapsed from the time appellant was first served with process on the petition until he filed an answer to the second contempt proceeding. Prior to filing the second contempt proceeding, appellant had been served with process on two occasions and had paid $500.00 to purge himself of his contempt.
Appellant contends that the decrees should be set aside for the reason that he was illiterate, could not read and write, and did not know the significance of the process which was served upon him. His employer testified on the hearing in appellant’s behalf and stated that when she went to get Donaldson out of jail she asked him why he had not brought the papers to her. The following conversation occurred between appellant and her:
Q. Do you mean Andrew?
A. Andrew, right. And I asked him, I said why in the world when these papers was brought to you didn’t you come and bring them to me. And he said, “Well, Miss Sheila, I’ve always been taught if I didn’t do anything wrong I didn’t have anything to worry about.” And said, “Zelda May kept saying she was gonna have me locked up.” And said, “I knew she couldn’t lock me up if I hadn’t done anything.” And said, “I threw them away.” And I said, “Well, Sonny, legally you can’t do that, you know, even if you hadn’t done anything; you have to go and tell them, you know, that you hadn’t done anything.
Appellant testified that he has a third-grade education and could not read or write but could print his name; that he was served with the papers in 1979, and that he “just didn’t never do nothing about it;” that he was taught that if he had done nothing wrong, he could just forget about the papers; that when he was taken to jail, he paid the $500.00 and was told the reason for his arrest; that he had lived with Zelma Bankston, mother of the children, and helped support the children at that time; that he was forty-three years of age at the time of the hearing and that he knew how to work and take care of himself; that he had been working at Crew Motor Company sixteen or seventeen years as a truck driver; that he paid his taxes; and that there were plenty of people around to help him with things he was having trouble understanding because of his inability to read, when he asked them.
Haskell Turner, a co-employee of appellant, who operated the shop, stated that he drew maps for appellant to follow on truck *1379 deliveries to Chicago and other places and that Donaldson managed to follow them very well; that he had drawn hundreds of such maps with highway numbers and landmarks on them, and delivered them to appellant, who used them as a truck driver; and that appellant occasionally brought papers for him to read, including overweight tickets from truck scales, to find out what should be done about them.
Appellant contends that Rule 60(b)(6) applies to his situation and concedes that the other five reasons in Rule 60(b) are not pertinent. (See Rule 60(b) — Appendix)
Appellant relies upon three eases discussing Rule 60(b)(6), Fed.R.Civ.P., as authority for his position, viz, Ackerman v. United States, 340 U.S. 193, 71 S.Ct. 109, 95 L.Ed. 107 (1950); Klapprott v. United States, 336 U.S. 942, 69 S.Ct. 384, 93 L.Ed. 1099 (1949); and United States v. Karahalias, 205 F.2d 331 (D.C.N.Y.1953).
In Klapprott, a naturalized citizen sought to have a default judgment of de-naturalization set aside after four years because he was in prison, had been ill, and had no means to support payment for counsel. It was argued that the claim should be barred by the one-year limitation provision under Federal Rule 60 because the petition showed, at most, excusable neglect.[1] The United States Supreme Court held that the prayer should also be considered under Rule 60(b)(6) under the “Other Reason” clause inasmuch as petitioner was no more able to defend himself in the New Jersey court than it would have been had he never received notice of the charges and that the petition was not barred by the one-year limitation required for subsections (1), (2), and (3) under the Federal rule.
The respondent, in Ackerman, sought relief from a four-year-old denaturalization judgment under Rule 60(b)(6) because there had been no appeal on the advice of counsel and another individual. The United States Supreme Court held, however, that the failure to appeal was not a justifiable reason to be relieved from the judgment because the decision was “calculated and deliberate.” The Court noted that Ackerman could not compare to Klapprott because the choice in Klapprott was not freely made, and circumstances were extraordinary. 71 S.Ct. at 211, 213.
Karahalias also involved a respondent seeking relief from a default judgment of denaturalization. The Court pointed out that Federal Rule 60(b)(6) was meant to provide relief in situations of extreme hardship not covered under the other subsections. Karahalias was prevented from returning to the United States for nearly five years during World War II while his wife was critically ill. The Second Circuit Court of Appeals, in considering the importance of his interest in retaining his citizenship and contemplating that he was unable to do anything toward protecting his legal position, allowed the action to be revived.
We distinguish the case sub judice from Klapprott and Karahalias, supra, but are of the opinion that Ackerman gives some support to the decision of the lower court.
We are of the opinion that the substantive law prior to adoption of the Mississippi Rules of Civil Procedure would have afforded appellant no relief and would not permit the decrees to be overturned. Appellant, though uneducated and illiterate, had a wide experience in his employment and apparently knew how to get around and where to obtain advice and counsel. We do not think that Rule 60(b)(6) was intended to permit a person, such as appellant, to ignore a summons served upon him, not only in the original cause, but on petition to cite him for contempt. Also, an unreasonable period elapsed before he attempted to obtain any relief. Under the facts and circumstances of this case, we are of the opinion that Rule 60(b)(6) does not apply and that the lower court committed no error in denying the motion to set aside the decrees.
Therefore, the judgment of the lower court is affirmed.
AFFIRMED.
*1380 PATTERSON, C.J., WALKER and BROOM, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.

. Rule 60(b)(1), Fed.R.Civ.P., unlike the Mississippi rule, provides relief from judgment for mistake, inadvertence, surprise, or excusable neglect.